IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**EDWARD S. HINOJOS,**

        **Plaintiff,**

**vs.**                                                  **Civ. No. 10-1193 JH/LAM**

**THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,**

        **Defendant.**

## **MEMORANDUM OPINION AND ORDER**

This is an ERISA case in which the Plaintiffs seeks reversal of the Defendant's decision to deny him long-term disability benefits. Pending before the Court are three motions: (1) *Defendant's Motion for Summary Judgment* [Doc. No. 27]; (2) *Plaintiff's Combined Cross-Motion and Brief for Summary Judgment to Reverse Defendant's Denial of Long-Term Disability Benefits* [Doc. No. 26]; and (3) *Plaintiff's Motion to Strike Declaration of Helen Fister* [Doc. No. 33]. The Court has reviewed the motions, responses, replies, supporting evidence, and applicable legal authorities. After doing so, the Court concludes that Plaintiff's motion to strike should be granted, and judgment should be entered in favor of the Defendant.

### **FACTS**

Neither party takes issue with the facts in the record as set forth by the other. Thus, the foregoing facts are based upon the facts set forth in the parties' briefs and the administrative record.

**Claim History**

Plaintiff Edward S. Hinojos ("Hinojos") was a participant in an employee welfare benefit plan (the "Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§§ 1001 et seq. (Docket # 1-1 at Paragraphs 7-8.) The Plan was sponsored by Cargill Incorporated, for all hourly employees of Mosaic Global Operations Inc. and Mosaic Phosphates MP Inc. in Carlsbad, New Mexico. As an employee of Mosaic, Hinojos was a participant in the Plan, which provides for $40,000 basic life disability benefit and an additional $60,000 under the optional life disability benefit. Hinojos' claim was administered by Defendant, The Prudential Insurance Company of America ("Prudential"). (Docket #22, at D0003)

Hinojos worked as a surface product operator. On February 13, 2006, Hinojos was injured in a motor vehicle accident that put him out of work. (D183, 709) As a result of the accident, Hinojos developed chronic low back and neck pain, as well as right ankle pain. (D095, D0200). Hinojos submitted a claim for "Total and Permanent" disability benefits which was received on March 5, 2007. (D766) On May 9, 2007, Prudential issued its first denial of Hinojos' claim on the grounds that he failed to give timely notice of the claim within one year of his total disability. However, at Mosaic's request Prudential then waived the time limit and considered Hinojos' claim on its merits. On May 23, 2007, Prudential again denied Hinojos' claim because it was likely that he would one day be able to work a light or sedentary job on at least a part-time basis. (D0732-734) On June 27, 2008, Prudential upheld the initial decision on appeal. (D0708-711, D0698-703) On September 29, 2008, the Social Security Administration issued a Fully Favorable Decision to Hinojos after determining that he met the medical requirements for Social Security disability benefits. (D0659- 663) On November 18, 2008, Prudential reopened Hinojos' claim in order to review additional documentation forwarded by his attorney. (D0706) Prudential also engaged a peer review service to engage a physician who specializes in pain management and rehabilitation to study Hinojos' claim, including all medical documentation within Hinojos' file. (D0705) The administrative process concluded with Prudential's final denial on December 16, 2008. (D699)

Hinojos filed this lawsuit on November 15, 2010. (Docket # 1-1)

**<u>Terms of the Plan</u>**

Under the terms of the Plan, Participants are entitled to "Total and Permanent" disability benefits when:

> (1) You are Totally and Permanently disabled (as defined in Section E); and
> (2) Your death benefit protection is being extended under Section C; and
> (3) For the entire year before their Total Disability began, you were continuously insured under either:
> > (a) this Coverage; or
> > (b) this Coverage and any Prudential rider or group contract replaced by this Coverage; and
> (4) You have not received any Terminal Illness Proceeds under the Option to Accelerate Payment of Death Benefits under the Group Contract.

(D824-825) Section E provides that a Participant is "Totally Disabled" when:

> (1) you are not working at any job for wage or profit; and
> (2) due to sickness, injury, or both, you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

Section E further provides that a Participant is "Totally and Permanently Disabled" when:

> (1) Total disability exists; and your Total Disability is such that condition (2) of the above "Total Disability" definition will be met for the rest of your lifetime; and/or
> (2) You suffer:
> > (a) total and permanent loss of sight in both eyes, or
> > (b) the Loss of Use of both hands or the loss of both hands by severance at or above the wrist; or
> > (c) the Loss of Use of both feet or the loss of both feet by severance at or above the ankle; or
> > (d) the Loss of Use of one hand and one foot or the loss of one hand and one foot by severance at or above the wrist or ankle.

(D826) Thus, to qualify for the "Total and Permanent" disability benefit, a participant must be not working, be unable to perform "any job," and both of those conditions must be met for the rest of the participant's lifetime.

**Plaintiff's Medical History**

On February 13, 2006, Hinojos was involved in a motor vehicle collision. (D0183-185) From February 17, 2006 through July 26, 2006, chiropractor Dr. John Medley, D.C., treated Hinojos using chiropractic manipulation, electrical stimulation, and laser therapy. (D0453-493) On March 10, 2006, an MRI of Hinojos' cervical spine revealed that there were no compression fractures or spondylolisthesis. (D0542) The MRI also showed a mild disc bulge at C3-C4, C4-C5 and C6-C7 which was slightly more prominent at C5-C-6 and C6-C7. (D0542) In addition, an MRI of the lumbosacral spine on that same day revealed a disc bulge at L3-L4 and L4-L5 that was compressing the dural sac. Hinojos also had a radial tear at the L4-L5 level. (D0540)

Hinojos also attended nineteen physical therapy sessions over a three-month period ending August 9, 2006. (D0163). Although the therapy had helped reduce Hinojos' neck pain by more than 50% and had somewhat reduced his back pain, he reported no improvement over the final three weeks of his therapy. (Id.) Further, Hinojos was unable to meet two of his three long-term goals, which were to increase cervical and lumbar range of motion with no pain and to increase strength in the cervical and lumbar muscles. (Id.) Hinojos had thirteen additional rehabilitation visits in October and November of 2006, but he still experienced continuing constant pain and restrictions in activities of daily living. (D0145-0157)

On September 4, 2006, neurologist Dr. Rahul Dewan examined Hinojos. (D0526) In a return visit on September 13, 2006, Hinojos reported that his neck pain and stiffness temporarily improved with injections, but returned after one or two days. (D0524) On exam, Hinojos had stiffness and significant pain around the trapezius and scalene muscles bilaterally. (Id.) Dr. Dewan recommended Botox and gave Hinojos samples of Cymbalta. (D0522) On October 18, 2006, Hinojos underwent an EMG/nerve conduction study, which Dr. Dewan reported as normal.

(D0528-529) Then on October 20, 2006, Hinojos began neck and low back physical therapy treatment through November 20, 2006. (D0145-162)

Also on October 20, 2006, Dr. Leon Cohen, DPM examined Hinojos on referral by Dr. Medley due to his reports of ankle pain. (D0598)  Dr. Cohen diagnosed Hinojos with soft tissue symptoms relative to a prior sprain and provided him with a flexible cast. (Id.)  Hinojos had approximately 12 podiatry visits through January 10, 2007. (D0598-601)

On January 17, 2007, Dr. Marshall G. Baca, whose specialty is orthopedics, evaluated Hinojos' right ankle. (D602-603) On February 6, 2007, Hinojos underwent a diagnostic arthroscopy of the right ankle with osteochrondal loose body excision and debridement of impinging osteophytes in the tibiotalar articulation. (D0544-545)

On February 22, 2007, Dr. Dewan prepared an Attending Physician's Statement, which indicated that Plaintiff's neck, back, and right foot pain prevented him from working as of February 13, 2006. (D0069-070)  Dr. Dewan checked a box indicating that Hinojos has made significant progress, and noted in the "Prognosis" section was that he should have "continued improvement of pain." (D0070)  He recommended that Hinojos should refrain from work while receiving treatment, not use stairs, no lifting and no long walks. (Id.)  The medical obstacle to Hinojos' return to work was that he "cannot do heavy lifting." (Id.)  Dr. Dewan did not fill out the portion of the questionnaire relating to modification of job duties or other jobs that might be suitable for Hinojos. (Id.)

On August 22, 2007, neurosurgeon Dr. Richard George examined Hinojos and reported that three prior Botox injections and three prior epidural steroid injections had provided very little relief of symptoms. (D0095)  On September 11, 2007, Dr. George performed a surgical procedure on Hinojos called an anterior cervical discectomy with the placement of a plate, at C5, C6 and C7.

"There were no intraoperative complications." (D0134-136)  Hinojos was subsequently admitted to the hospital from November 29, 2007 through December 12, 2007 for a surgical procedure called a bilateral laminectomy at L3-L4 with left-sided microdiscectomy, which went well and without any complications. (D0098- 104)  On January 16, 2008, after both surgeries, Dr. George examined Hinojos, who still complained of residual neck discomfort, numbness in his hands, back pain and left lower extremity pain. (D0091) They discussed Hinojos returning to work or finding a less physically demanding job. (Id.) Dr. George stated that: "We have talked about him possibly finding less physically demanding work, but I have explained to him that he should be able to resume his normal work duties and I do not see him having long term issues related to this." (D0091)

On February 20, 2008, Hinojos revisited Dr. George and reported that his neck pain improved considerably. (D0090)   Hinojos' low back complaints continued, but his pain was 25% better.  Dr. George again reassured Hinojos that his long term prognosis is "quite good." (Id.) However, on March 26, 2008, Dr. George noted that Hinojos was still having significant issues with pain and that the pain was more significant in his neck and interscapular region than in his lower back. (D0088).  He noted that Hinojos had gone through an exhaustive trial of physical therapy without benefit.  (Id.)  Dr. George was "perplexed" by his patient's lack of progress and recommended an EMG, a nerve conduction study of the lower extremities, and an MRI.  (D0088-0089) In the absence of any new findings, Dr. George believed he had exhausted all of the options for surgical intervention.  (D0089)

In an April 18, 2008 letter to Dr. Robert Pennington, M.D., Dr. George summarized his treatment of Hinojos up to that date:

> Mr. Hinojos had presented to us with a history of developing significant pain following a motor vehicle accident. He had degenerative changes at C5-C6 and C5-C7 with a herniated disk. He had significant degenerative changes at L3-L4 and

> L4-L5. There was a herniated disk on the left at L3-L4. He underwent an anterior cervical diskectomy and fusion. We removed an extruded disk fragment and did a two level arthrodesis. This has progressed on to a solid fusion. We did an L3-4 decompression with a left-sided diskectomy. At the time of the procedure, we found that Mr. Hinojos had a calcified disk. I was able to remove the lateral portion of this and decompress the traversing nerve root. Mr. Hinojos has not done well following surgery. He continues to have significant neck pain above and below the site of his fusion. He is also having mechanical back pain as well as residual left radicular pain and sensory changes in an L4 distribution. He has had an exhaustive trial of physical therapy without benefit. He came in today and I reevaluated him with an MRI scan of his cervical spine. His MRI scan shows a very good decompression of the exiting nerve roots. He has well hydrated disks above and below without evidence of degeneration. In the lumbar spine, he has a residual disk herniation which represents a central calcific disk. He has the degenerative facet arthropathy at L3-4 and L4-5 that he had prior to surgery. I see no evidence of ongoing nerve root compression. I have explained to Mr. Hinojos that I have exhausted all options of surgical therapy and I do not see that he has an ongoing surgical lesion.
> ***
> I am hopeful that you are able to help Edward with his ongoing pain. He is a pleasant gentleman who seems motivated to become active, but still has residual issues which are causing him significant ongoing problems with his ability to work. He has indicated that he would like to have a functional capacity evaluation performed and we will be referring him to Dr. Hill locally for this evaluation.

(D0086-087.) In May of 2008, Dr. George completed a capacity questionnaire that indicates Hinojos could not work full time (eight hours per day, five days per week), but is able to work part time (4 hours per day, 5 days per week) with certain limitations to how much he can lift or carry, and how frequently he may stoop, climb stairs, or reach overhead. (D081) However, Dr. George stated that Hinojos can perform constant reaching at desk level, as well as handling/fingering with both the left and right hands, in addition to frequent carrying of ten pounds or less. In response to the question "(w)hen do you expect the patient will be capable of full time return to work?", Dr. George stated that it was unknown. (Id.)

On May 1, 2008, Kevin McAlpin, D.C., prepared a functional capacity evaluation ("FCE") report on referral from Dr. George. (D0008-0016.) At that time, Hinojos stated that he rated his pain as a nine on a scale from one to ten for his neck, back, and ankle. Dr. McAlpin determined that

Hinojos was capable of performing light-capacity work, limited to occasional lifting of 20 pounds; no climbing ladders, kneeling or crawling; and no more than 2 hours per day of stair climbing, stooping, reaching overhead, walking and standing. (D0008)  Hinojos was able to perform the following exercises: static leg lifts with an average force of 66 lbs., torso lifts 23 lbs., arm lifts 35 lbs., high rear lift 28 lbs., push 35 lbs and pull 42 lbs. (Id.)  Hinojos was able to perform dynamic box lifts from floor to knuckle with 28 lbs. and knuckle to shoulder with 38 lbs. (Id.) He also carried 38 lbs. for forty feet. (Id.)

At Prudential's request, on June 27, 2008, a vocational rehabilitation specialist conducted an employability assessment which entailed a review of the FCE dated May 1, 2008 and the capacity questionnaire written by Dr. George, wherein it was determined that Plaintiff has the following restrictions and limitations: occasional lifting to 20 pounds, occasional standing/walking/stooping/stair climbing/overhead reaching; and no ladder climbing, kneeling or crawling. (D0761)  The file contained no job description, but did contain information regarding Hinojos' education, training and experience.  Hinojos described his job as supervisory ("supervise personnel on plant operations and safety") and refinery operations ("heavy equipment repair" and "maintenance, clean-up"). (D0762) The vocational rehabilitation specialist conducted a transferable skill analysis considering Hinojos' current limitations and found that, after minimal on the job training, Hinojos would be capable of performing the following occupations: electronics tester; assembler, small products; and electric tool repairer. (D0762)

On December 4, 2008, Dr. Thomas Lazoff, a physician board certified in physical medicine and rehabilitation as well as pain medicine, performed an independent peer review of Hinojos' medical records in conjunction with his second-level appeal. (D0642-652.)  Dr. Lazoff opined that Hinojos does have functional impairments from 2006 forward regarding his cervical spine and

lumbar spine. (D0649.) In regard to his right ankle, Dr. Lazoff opined that six months after surgery, Hinojos' right ankle should be sufficiently healed. (Id.) Regarding Hinojos' cervical spine and lumbosacral spine, Dr. Lazoff opined that Hinojos does have some restrictions, which would be in place from August 2007 forward, but none that would preclude light duty work. (D0650.) Specifically, Dr. Lazoff found the following limitations appropriate:

> Thus, in relationship to the neck and the low back, there are no recommended limitations to sitting. He can sit constantly for one-hour intervals during the eight-hour day with the ability to move about for three to five minutes for every continuous hour of sitting. Walking would be unlimited. Standing is restricted to 30-minute increments to a maximum of 4 hours in an 8-hour day. Lifting is restricted to occasionally at a maximum 20 pounds, frequently 10 pounds; likewise with carrying. There are no limitations/restrictions to fine motor activity with the upper extremities gripping, fingering, etc. He should avoid any ladder climbing, kneeling or crawling. He could climb stairs on an occasional basis as well as reach overhead and below waist level. There are no reaching restrictions between the plane of the shoulder and waist. These would be permanent in nature . . .[.]

(D0650-651.) He also observed that Hinojos' self-reported chronic pain is "mostly consistent with MRI findings. He also had surgical intervention which could obviously not be successful as far as complete pain relief." (D0651)

## DISCUSSION

### I.   EQUITABLE TOLLING OF THE LIMITATIONS PERIOD

Prudential raises a threshold issue, namely, whether Hinojos' lawsuit is timely under the three-year contractual limitations period set forth in the Plan. It provides that a claimant must provide Prudential with written proof of the loss within 90 days after the date of that loss. (D0843) Further, it provides that a claimant may not file a lawsuit to recover under the Plan more than three years after the end of the time within which proof of loss is required. *Id.* It is undisputed that in this case, Hinojos' fist day out of work was February 13, 2006, and therefore the cut-off date to submit proof of claim was 90 days later, on May 14, 2006. Thus, under the Plan's contractual limitations

period, Hinojos had until May 14, 2009 to file his lawsuit. However, the administrative process did not conclude until Prudential issued its final denial of Hinojos' claim on December 16, 2008. Hinojos did not file his complaint until November 15, 2010. Thus, Prudential argues that the claim is time-barred. In response, Hinojos contends that the three-year limitations period should be equitably tolled while he was pursuing his administrative appeal, a necessary prerequisite to filing suit. The Court agrees.

Prudential does not argue that it has been prejudiced by Hinojos' delay in filing his claim. Rather, in arguing against equitable tolling, Prudential cites two Tenth Circuit cases. In *Salisbury v. Hartford Life and Accident Ins. Co.*, 583 F.3d 1245, 1249 (10th Cir. 2009), the claimant argued that the Plan's three-year contractual limitations period was unenforceable because it was triggered by the deadline for providing proof of loss, not by the date the claimant exhausted her administrative review by the Plan administrator. The court declined to follow the Fourth Circuit's refusal to enforce a contractual limitations provision merely because it allowed the claimant's cause of action to accrue before the end of the administrative process.[1] The Tenth Circuit concluded that it need not go that far because "less drastic remedies," such as "allow[ing] a claimant at least a reasonable time after exhaustion of administrative remedies" or "equitable tolling during the pendency of the administrative review process" would "take account of both the Plan's right to set a limitations period and the claimant's need to exhaust administrative remedies." *Id*. Thus, of its own accord the Tenth Circuit indicated that it would be willing to consider equitable tolling under the right circumstances. The court declined to apply that equitable tolling in *Salisbury* because the issue had

---

[1] It is undisputed that exhaustion of administrative remedies is a prerequisite to seeking judicial review of a denial of ERISA benefits. *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir. 1990); *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999).

not been raised by the parties and because the claimant had filed her lawsuit so late that even equitable tolling could not save it, rendering the issue moot. *Id*. The clear implication of *Salisbury* is that the Tenth Circuit has not foreclosed the option of equitable tolling in circumstances such as those presented here. The Tenth Circuit's unpublished opinion in *Moore v. Berg Enters*., 1999 WL 1063823 (10th Cir. Nov. 23, 1999), the other case upon which Prudential relies, does not change this conclusion. In that case, the court concluded that a three-year contractual limitations period similar to the one at issue here was reasonable, and it implied that limitations period to conclude that the claim was untimely. *Id*. at *2. The Tenth Circuit did not discuss, much less foreclose, the possibility of equitable tolling of the contractual limitations period while the claimant pursues the required administrative remedies.

In this case, Hinojos exhausted his administrative remedies—a prerequisite to judicial review—and then filed his lawsuit less than two years after Prudential's final denial of his claim. This Court concludes that it would be unreasonable to deny Hinojos the benefit of ERISA's protection after he spent the time and effort exhausting his administrative remedies as ERISA requires. Thus, the contractual limitations period is tolled during the pendency of Hinojos' administrative appeal, and his lawsuit in this court is timely.

## II.     MERITS OF THE APPEAL

### A.     Standard of Review

In an ERISA case where, as here, the plan " 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' " the court reviews the administrator's decision for an abuse of discretion. *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (quoting *Fought v. UNUM Life Ins. Co. of Am.*,

379 F.3d 997, 1002-03 (10th Cir. 2004), *abrogated on other grounds by Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2351 (2008)); *see also Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 n. 10 (10th Cir. 2008) (describing terms "arbitrary and capricious" and "abuse of discretion" as interchangeable in this context). Both parties agree that the plan at issue in this case grants discretion, and that this is the proper standard of review.

Under this standard, the court "will uphold an administrator's decision so long as it is predicated on a reasoned basis." *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (internal quotation marks omitted), *cert. denied*, ––– U.S. ––––, 130 S.Ct. 3356, 176 L.Ed.2d 1246 (2010). The arbitrary and capricious standard is a deferential one. *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008). An arbitrary and capricious denial of benefits may be indicated by a "lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Graham*, 589 F.3d at 1357–58 (internal quotation marks omitted). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance." *Id*. at 1358 (internal quotation marks omitted). "[T]here is no requirement that the basis be the only logical one or even the superlative one . . . [only that] the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).

### B. What Evidence Should Be Considered

Plaintiff has moved to strike the Declaration of Ellen Fister, attached as Exhibit C to Prudential's Motion for Summary Judgment (Doc. No. 27). Ms. Fister is an attorney for Prudential, and the sole purpose of her declaration is to authenticate certain documents that are attached to it. These include: (1) a copy of a Myspace page for an Edward Hinojos with the same birth date as

Plaintiff, which printout shows a campaign banner that states: "Edward Hinojos for City Council 4th Ward," (2) a copy of a photograph from the foregoing Hinojos Myspace page showing a banner containing the name EDDCO Construction, (3) a copy of a printout from a City of Carlsbad, New Mexico website that lists candidates for the municipal election, including Edward S. Hinojos as a candidate for City Council Ward 4, (4) a copy of a printout from a New Mexico contractor's licensing website that lists a business known as EDDCO Construction and Services, with Edward S. Hinojos Sr. as licensee.

Hinojos argues that the Court should strike this evidence because it is not contained in the administrative record and therefore was never considered by the Plan administrator. In response, Prudential contends that this case presents "unique circumstances that may warrant the court's consideration of material outside that record." Doc. No. 36 at 1. Specifically, Prudential argues that the Court has good cause to consider materials outside the administrative record because the relevant evidence came to light after the administrative process had concluded. According to Prudential, Hinojos waited more than two years after the administrative process was complete to file his lawsuit, and during that intervening period, publicly available information shows that he has been working and running for public office—activities which demonstrate that he is not "totally and permanently disabled" as those terms are defined by the Plan. Because this evidence was not available during the administrative process, Prudential argues that good cause exists to consider the additional evidence.

The Tenth Circuit has frequently and consistently reiterated that, " 'in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record.' " *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008) (quoting *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004)); *see also,*

*e.g., Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (citing *Fought*, 379 F.3d at 1003); *Fought*, 379 F.3d at 1003 (citing *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002)).  The reason for this rule is simple:

> Both a plan participant and an administrator have a fair opportunity to include in the record materials related to the participant's eligibility for benefits.  Because the administrator must base its decision on the materials included in the administrative record, a district court would have no justification for concluding that an administrator abused its discretion by failing to consider materials never submitted to it for inclusion in the administrative record.

*Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1159 (10th Cir. 2010).  *See also Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190-91 (10th Cir. 2007) (explaining that district court could review reasonableness only of rationale for denying claim that is asserted in the administrative record because the restriction on review of extra-record materials also prevents an administrator from submitting extra-record materials or theories), *overruled on other grounds, Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192-93 (10th Cir. 2009).

Prudential acknowledges that the Tenth Circuit has never recognized a "good cause" exception to the well established rule limiting court review to the administrative record.  Instead, it relies upon an unpublished case from the Second Circuit, *Walker v. Unumprovident Corp.*, 206 Fed. Appx. 12, 14-15, 2006 WL 2930132 at *2 (2d Cir. 2006) (unpublished), and a case from a district court outside the Tenth Circuit, *Sanzone v. Hartford Life & Acc. Ins. Co.*, 519 F. Supp. 2d 1250 (S.D. Fla. 2007).   Neither of these cases aids Prudential's position.  In *Walker*, the Second Circuit observed that the plan administrator largely failed to develop an adequate administrative record, and therefore the district court acted reasonably in allowing  the claimant to supplement the record with the highly relevant medical testimony.  *Id.* at **2.  Moreover, the plan administrator

14

raised a new issue concerning the claimant's job duties for the first time at trial, and therefore the Second Circuit concluded that it was well within the district court's discretion to admit evidence outside the administrative record that would aid the court in resolving that issue. *Id*. Neither circumstance is present here, as Prudential had a fully developed record at the time it made its decision denying benefits, and there is no new issue being raised for the first time in this court that requires submission of additional evidence not contained in the administrative record. *Sanzon*e is similarly unavailing. There, the district court denied a claimant's request to supplement the administrative record, emphasizing that law in the Eleventh Circuit required the court to confine itself to reviewing that record only. 519 F. Supp. 2d at 1257-58. The court observed that the claimant had failed to show good cause to supplement the record, without explaining what a showing of good cause requires. *Id*.

The law in the Tenth Circuit requires the Court to confine its review to the administrative record, and Prudential has failed to demonstrate otherwise. Accordingly, Hinojos' motion to strike will be granted, and the Court will not consider Ms. Fister's affidavit or the exhibits attached thereto. Instead, the Court will limit its consideration to the administrative record in this case.

### C. Whether Defendant's Decision Is Based Upon Substantial Evidence

The Court must determine whether Prudential's decision that Hinojos is not "totally and permanently disabled," as that term is defined by the Plan, was arbitrary and capricious. After reviewing the record, the Court concludes that Prudential's decision is supported by substantial evidence and therefore must be upheld.

According to Prudential's December 16, 2008 letter to Hinojos explaining its final denial of benefits, it concluded that he was not eligible because it "determined that documentation did not support a physical impairment that would prevent [Hinojos] from performing the duties of any job

*for the rest of his lifetime*." (D00700) (emphasis in original). Prudential acknowledged a temporary functional impairment in Hinojos' ankle, as well as ongoing functional impairments in his neck and low back. (D00701) However, Prudential then cites the functional capacity evaluation conducted by McAlpin, in which he opined that Hinojos was capable of light duty work, as there are no recommended limitations to sitting, walking, or fine motor activities, and that Hinojos can stand and lift or carry up to 20 pounds occasionally. (D00702) Prudential also referred to the report by the vocational rehabilitation specialist, who identified three jobs within Hinojos' restrictions that he would be reasonably qualified to perform based on his education, training or experience. Based on the foregoing, Prudential concluded that Hinojos was not so impaired that he could not perform work duties of any job for the rest of his lifetime. Id. Prudential also referred to more complete explanations of its decision in its letters dated May 23, 2007 and June 27, 2008. (D00700)

      The Court's review of the administrative record comports with the reasons cited by Prudential for its denial of benefits. While Hinojos' neurologist, Dr. Dewan, stated on February 22, 2007 that Hinojos should refrain from work while receiving treatment, not use stairs, perform no lifting, and take no long walks, he did not state that Hinojos was incapable of performing sedentary work. Dr. Dewan stated that the obstacle preventing Hinojos from returning to work was that he could not perform heavy lifting, which suggests that Dr. Dewan focused solely on Hinojos' former job and did not consider whether his patient could perform other sedentary, part-time work for which he might be qualified by training, education and experience. In fact, Dr. Dewan did not fill out the portion of the questionnaire relating to modification of job duties or other jobs that might be suitable. Hinojos' treating neurosurgeon, Dr. George, envisioned Hinojos being able to return either to his normal work duties or to less physically demanding work. Dr. George completed a capacity questionnaire in which he acknowledged Hinojos' ongoing physical challenges. However, Dr.

16

George also stated that Hinojos could work part time with certain limitations as to how much he could lift or carry.  Dr. George also stated that Hinojos can perform constant reaching at desk level, as well as handling/fingering with both the left and right hands, in addition to frequent carrying of ten pounds or less.  On referral from Dr. George, Kevin McAlpin performed an FCE and concluded that Hinojos could perform light duty work with certain physical limitations.  Prudential did not hire any of these experts to evaluate Hinojos.

However, Prudential did retain a vocational rehabilitation specialist to evaluate Hinojos' medical condition and his ability to return to employment.  That individual identified three jobs that would be consistent with Hinojos' physical limitations as well as his education, training and experience.  Finally, a physician board certified in physical medicine and rehabilitation as well as pain medicine, Dr. Lazoff, concluded that Hinojos was capable of light duty work with limitations similar to those described by Dr. George and Mr. McAlpin.  In light of all the foregoing, the Court concludes that Prudential had reasonable grounds to conclude that Hinojos was not precluded from performing any suitable job for the rest of his lifetime, as required to be eligible for disability benefits under the Plan.  To be sure, there is evidence in the record that Hinojos has ongoing medical problems, pain, and limitations.  However, the question posed by the Plan language is whether Hinojos can perform *any* job for which he is reasonably qualified for the remainder of his lifetime.  The Court concludes that there is substantial evidence in the record to support Prudential's determination that Hinojos does not meet this standard.

Hinojos argues that Prudential has entirely ignored the fact that he received a fully favorable decision on his disability claim with the Social Security Administration ("SSA").  Though he acknowledges that the SSA applies a standard for evaluating disability that is different than that set forth in the Plan, Hinojos contends that Prudential failed to consider the SSA decision, which tends

17

to show an abuse of discretion by the Plan administrator. *See* Doc. No. 32 at 4-5. Prudential, in turn, argues that the SSA decision is neither dispositive nor persuasive. The Court agrees with Plaintiff that the SSA decision is a factor that weighs in favor of a finding of disability, but its failure to persuade Prudential is far from damning in light of the medical records discussed above. Thus, the SSA decision does not change the ultimate conclusion of this Court, which is that Prudential made a reasoned decision supported by substantial evidence in the administrative record. That is all that is required—Prudential need not demonstrate that it made the best or only decision in light of the evidence. Indeed, it need not even show that its decision is supported by the preponderance of the evidence. Prudential's decision denying benefits to Hinojos will be upheld, and its motion for summary judgment will be granted. Hinojos' cross motion for summary judgment will be denied.

**IT IS THEREFORE ORDERED** that:

(1)   *Defendant's Motion for Summary Judgment* [Doc. No. 27] is **GRANTED**, and judgment will be entered in favor of Prudential;

(2)   *Plaintiff's Combined Cross-Motion and Brief for Summary Judgment to Reverse Defendant's Denial of Long-Term Disability Benefits* [Doc. No. 26] is **DENIED**; and

(3)   *Plaintiff's Motion to Strike Declaration of Helen Fister* [Doc. No. 33] is **GRANTED**.

_____
UNITED STATES DISTRICT JUDGE